THE VULCAN DETINNING COMPANY, appellant,

*v.*

THE AMERICAN CAN COMPANY, respondent.

[Argued March 14th, 1912.   Decided November 18th, 1912.]

1. When, in a suit to restrain the use of a secret process, the complainant also seeks an accounting of the profits made by the defendant, the former elects to treat the latter as a *quasi*-trustee, rather than as a wrong-doer who should be compelled to answer in damages for his wrongful acts.

2. The proceeding for such an accounting is one taken for the sole purpose of ascertaining what, in fact, was the net profit made by the defendant in the conduct of the business during the period of the accounting.

3. In an account so taken the defendant is entitled to be credited with all expenditures made by it in the carrying on of the business, and for the benefit of the business, all moneys paid for repairs to plant and machinery, all moneys paid for taxes thereon. It also includes depreciation in the value of the plant and machinery, notwithstanding the fact that such depreciation is abnormal because the plant can no longer be used by the defendant for the carrying on of the business for which it was originally designed, and cannot be adapted to other legitimate uses without the expenditure of large sums of money.

4. In such an accounting the complainant is entitled to interest on the net profits made by the defendant in its business, and the account should be stated with annual rests, and interest on the annual net profits shown should be allowed to the complainant.

---

On appeal from a decree of the court of chancery advised by Vice-Chancellor Howell.

*Mr. Robert H. McCarter* and *Mr. Henry Wollman* and *Mr. Edward S. Seidman* (of the New York bar), for the detinning company.

*Mr. Richard V. Lindabury* and *Mr. Thomas Thacher, Mr. Philip G. Bartlett* and *Mr. Julius F. Workum* (of the New York bar), for the American Can Company.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

A final decree having been made in this case restraining the defendant, the American Can Company, from continuing the use of a secret process of the complainant company for detinning tin scrap, and requiring it to account to the complainant for the profits which it had made through the use of that process, a reference was directed to Hon. William J. Magie, one of the masters of the court of chancery, for the purpose of stating such an account. Both parties attended before the master, and an exhaustive examination, covering many days, was had of the expenditures made by the defendant in connection with the use of the complainant's secret process, and of its income from that source. At the conclusion of this examination the learned master filed his report, stating the account between the parties, from which it appeared that the net profits derived by the defendant from the use of the secret process during the period covered by the accounting amounted to the sum of $677,352.18. Each party excepted to the account, and a hearing of the exceptions was had before the vice-chancellor, who, after a consideration of each item of the account which was made the subject-matter of an exception by either party, confirmed the report of the master *in toto,* basing his approval of the disposition made by that officer of the items excepted to upon the reasons given by him, and set forth in his report. From the order confirming the master's report both parties have appealed to this court, and each of them now contends that so far as the overruling of the exceptions to the report taken by it are concerned, the order is erroneous, but not otherwise.

Our examination and consideration of the voluminous testimony taken before the master of the careful, painstaking and lucid report of that officer, and of the exhaustive briefs which have been furnished us by counsel for the respective parties, satisfies us that, except with regard to certain items which were disallowed by the master, the account was rightly stated between the parties, and the master's report properly confirmed.

Taking up the consideration of those items. It is to be borne in mind that when, in a suit to restrain the use of a secret process, the complainant also seeks an accounting of the profits made by the defendant, he elects to treat the latter as a *quasi*-trustee, rather than as a wrong-doer who should be compelled to answer in damages for his wrongful acts. In other words, the complainant, in effect, says: "The profits which would have been distributed among the stockholders of the American Can Company, had the user of the secret process by that company been a lawful one, belong to me, and I am entitled to have an account taken showing what those profits amount to, and an order that they be paid to me instead of to the stockholders of the can company." But the fact that the complainant has elected to stand in the place of the stockholders of the defendant company as the party for whose benefit the account is to be stated, does not at all affect the principles upon which the statement of the account is to be had. The proceeding is not one for the punishment of a wrong-doer, not one for the imposition of a penalty upon a person who has been guilty of a fraud, not one for the ascertainment of the sum which will compensate the complainant for the loss suffered by it from the wrongful use of the secret process by the defendant, but one taken for the sole purpose of ascertaining what; in fact, was the net profit made by the defendant company in the conduct of the business during the period of the accounting. In an account so taken the defendant is entitled to be credited with all expenditures made by it in the carrying on of the business, and for the benefit of the business; and this includes not only the items allowed by the master, but also the following items disallowed by him, viz., all moneys paid for repairs to plant and machinery, all moneys paid for insurance thereon, and all moneys paid for taxes thereon. It also includes depre-

ciation in the value of the plant and machinery, notwithstanding the fact that such depreciation is abnormal because the plant can no longer be used by the defendant for the carrying on of the business for which it was originally designed, and cannot be adapted to other and legitimate uses without the expenditure of large sums of moneys. Such depreciation, no matter what causes it, decreases the profits made in the business, and, as we have already said, the sole matter to be ascertained is what were the *actual* profits made? In determining this matter it is immaterial what the conditions were which operated to increase or decrease them.

Because of the refusal to allow a credit of these items to the defendant in its accounting, the order confirming the master's report must be reversed. If the parties can agree as to how much of the expenditures for repairs, insurance and taxes were made during the period covered by the accounting, and how much of the depreciation of the plant, and so forth, is attributable to the same period, the order may be modified by allowing credit to the defendant for the sums so agreed upon; otherwise the case must be sent back to the master for the ascertainment of these accounts.

In the accounting before the master the complainant claimed that it was entitled to interest on the net profits made by the defendant in its business, and this claim was rejected by the master, and his action in this regard confirmed by the court below. We think this claim should have been allowed. The defendant, as we have already stated, occupies the position of a *quasi*-trustee, carrying on the business for the benefit of the complainant. Normally, a trustee conducting a business for the benefit of a *cestui que trust,* is bound to account for and pay over to the latter, at reasonable intervals, the profits made by him, and if he retains the profits after such payment should have been made, he is chargeable with interest upon the sums so retained. Instead of treating the defendant as wrong-doer, the complainant elected (as it had a right to do) to hold it as a trustee carrying on the business for its benefit, and it is entitled to have the ordinary rules governing in an accounting between trustee and *cestui que trust* applied to the defendant. The account should be stated

with annual rests, and interest on the annual net profits shown allowed to the complainant.

If the parties can agree upon the amount of interest to which the complainant is entitled under the rule stated, the order will be modified in accordance with such agreement; otherwise this matter also must be sent back to the master for ascertainment.

The order under review will be reversed and modified in accordance with the views herein expressed.

No. 40—

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE—11.

No. 41—

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE—11.